My name is Francisco Barba for the petitioner. The issues before this court can be reduced to errors by the judge in not allowing evidence that is material to the case to be admitted. Mainly the testimony of the witnesses, the qualifying relative children, the qualifying relative parents of the respondent, and in not reviewing and commenting on existing evidence that was submitted on the record. The judge argued that the case did not rise to the level required by matter of Monreal because the parents had not been shown to be solely dependent on the respondent. The judge missed a whole range of items of evidence which were submitted indicating, beginning with the fact that the parents, legal resident and U.S. citizen, had been listed in the petition. The income tax records of the respondents since 1990, that is 12 years before. So that will show total dependency on them. The judge did not take into account that, as had been submitted on the record, that the parents lived at the respondent's home, that the respondents were relying on his wife to make their trips to the doctor. So that is information that the judge could have and should have taken into account before making the conclusion that this case does not rise to the level required by Monreal for not showing that the parents were solely dependent on the respondent. At a later point, the judge elects to look for medical hardship in the three United States citizen children, ages 14, 12, and 11. But the judge neglected to look where there was plenty of medical evidence, beginning with the fact that all five qualifying relatives are under medical hardship. So medical insurance coverage emanating from the respondent's work. Second, 100 pages of evidence of major surgery endured by his wife, who is charged with the responsibility under the judge's decision to care for the two U.S. citizen parents of his, the three U.S. citizen children, and her own qualifying relative parents, who are also United States citizens. The judge also neglected to see or comment on the psychological report which was submitted and noted into the record. The judge did not mention at all the fact that the respondent's mother suffers from chronic migraine headaches which require regular prescription medication. So these are the reasons why the judge's decision is erroneous, and that is why the case should be remanded for a proper review of the record. And the other error that the judge made is that he did not take into account all the evidence that he should have under the existing standards. There are three standards where sources of hardship can be derived. One is the set of standards and issues enumerated in matter of Anderson, which the board has already stated is a valid place to start in developing hardship. We can assume for the sake of argument that if somebody has, which we do in this case, sufficient elements under matter of Anderson, that should take care of the threshold question of basic hardship. There are two other sources which can contribute, and we argue do contribute, to the hardship that is required under Monreal. One is the 50 years of precedent case describing what it means to say exceptional and extremely unusual hardship. The judge did not take into account the fact that this gentleman has been in the United States for over 20 years and is likely, by the results of IRARA, spent 10 years outside of the United States, away not only from the qualifying relatives, his children, his parents, but three more generations of family in the United States. Three generations of family also matched by the three generations of family of his wife. All those issues the judge did not take into account. We argue before this Court that he should have, that all those three sources of hardship should have been taken into account, and he did not. Any questions? Thank you. You may reserve the remainder of your time. Thank you, Your Honor. Good morning. May it please the Court. My name is Anne Tumai Wendell. I represent the United States Attorney General. This Court has determined that AUSC Section 1252A2BI precludes the Court from considering claims like Petitioner's that the Board misconstrued, or rather, that the Board underestimated the hardships presented by Petitioner. He raises two claims in order to overcome this jurisdictional hurdle and make a legal claim. However, his claims are nothing more than abuse of discretion arguments, which the Court doesn't have jurisdiction to consider. The first claim that the immigration judge somehow precluded the presentation of evidence is belied by the record. I would direct the Court to the following pages of the administrative record at pages 165, 168, 178, 189, and 192 to 194, where the immigration judge consistently indicated as far as the presentation of evidence that, here are a couple of different quotes, that my ordinary practice is to get an overview of the case from the parties before we start. Actually, I want to say first, but I appreciate your brief, Petitioner, because that sort of helped pull things in. So this should take less time for that reason. The immigration judge later stated that it seems to me this is a very complete file, so I think that the direct testimony can be completed in about a half an hour. The Petitioner's response was that, I understand, sir. The judge then stated, okay, if you get to the end of that time and you feel that you haven't accomplished what you want to or need to, then I'm willing to consider more time if you will tell me what you wish to elicit through further testimony. The Petitioner's response was, very well, Your Honor. Moreover, when it came to the testimony of Petitioner's parents, the immigration judge asked if the Petitioner would be receptive to making an offer of proof as to what they would testify, and Petitioner responded that they would be without any kind of objection or limitation on it. In fact, when the immigration judge asked what that offer of proof would be, Petitioner proceeded to provide that offer of proof without any hesitation, nor was there any limitation or objection at that point either. There are a number of different points where the immigration judge in his decision indicates all the evidence that was presented by Petitioner, and at page 137, the immigration judge concludes that he's considered all of the hardship factors raised, both individually and cumulatively, before reaching his conclusion that the weight of the evidence, unfortunately, weighed against the Petitioner in assessing exceptional and extremely unusual hardship. The second point that Petitioner makes reflects, or he alludes to the immigration judge's position that the weight of the evidence, or the weight of the evidence, weighed against the Petitioner in assessing exceptional and extremely unusual hardship factors. In that regard, the record also belies Petitioner's claims. The immigration judge considered family separation not only in the context of the potential separation if the family were to move to Mexico and would be separated from their extended family members and relatives, but rather, the immigration judge also considered it in the context of if the Petitioner was separated from his wife and three United States citizen children. Here the record have any indication why this person came to the attention of the authorities? Your Honor, I had gone through it, and I'm not quite certain as to how he did it. I mean, this seems particularly sad. Yes, Your Honor. I understand it, and I understand the case. In terms of the issue before the court, unfortunately, it is limited to consideration of whether or not there was any legal problem as opposed to whether the equities were, you know, well, it just, it just, well, if you're, if you, if the government succeeds here, then what we have is a lot of people who have lost their support. Who are lawfully, don't we, or not? Your Honor, the government doesn't concede that there is a significant loss. No, I'm not. But according to the record, there's not much to the point. Your Honor, actually, in response to that point, as well as Petitioner's points concerning the, any hardship to the parents, for example, with reference to the tax records, if Your Honors would refer to the relevant pages in the record at 468, 478, 497, 512, 519, 527, 535, 545, 556, 564, 570, 577, 590, or 583, rather, the tax records actually reflect that Petitioner's parents were, if they did live with him, were never, you know, listed as dependents between 19, or 2002 to 2000. And between 1990 and 1999, those parents lived in Mexico. So to the extent that there was hardship, well, that's one consideration in his reliance on the tax records. But the other consideration is the fact that there are several family members, one of which his uncle had owned the construction business, this uncle is also the brother of the parents. And there are eight United States citizen aunts and uncles who also have family members. And though it may be a burden, it also reflects, the record reflects that the family is cohesive and would be supportive of one another. In fact, Petitioner actually did live with his grandparents. What does the record say is going to happen to the children? Your Honor, it's not clear. Petitioner testified that he believed that the children would remain with the mother in the United States. However, Petitioner also stated that he did not discuss the matter with his wife and wasn't certain. In his application for cancellation, he indicated that his wife and children, his wife and children would come with him and then in his brief before the immigration judge, he also indicated that his wife and children would come before the immigration judge. And under this Court's precedent in Perez v. INS, the fact that there is insufficient evidence to show that there would be an intent to separate ways against the Petitioner, and it's appropriate for the immigration judge and the board to take that into account. This is... You know, counsel, I understand you make some really fine legal arguments to justify a position that the United States has taken in the past about this case. I know that my colleague here asked the government lawyer recently in a case, is that really the position of this new government agency for the election? We do have an excellent mediation service here, and we've even successfully had mediation of a capital punishment case. Sometimes a government agency is willing to reconsider an action that might appear to it to be unjust. This is, as Ted Schroder pointed out, a case in which maybe we're all caught up in the same trap, but it's not as if we're all caught up in a law. But there is a certain amount of prosecutorial discretion in most government agencies, and it can reconsider whether it really wants to do this to an American family of several generations. Perhaps with some new secretaries whose jurisdiction is immigration, the new justice department might be able to do something about it. It's possible that with mediation, somebody with authority might be willing to say, well, this is really a case in which it would be unfortunate for us to deport somebody. I'm not suggesting that that's likely to happen, but it's conceivable. Would you have any objection to going to our mediation service? Your Honor, that's something that we will take into account. However, I would point out that this case has been before the mediation office of this Court, and it was determined that there wasn't a basis for resolving at this time. As the immigration judge pointed out, part of the consideration was the fact that there were several avenues by which the petitioner could obtain legal status. Unfortunately, at this point, there isn't yet an opportunity for him to obtain that status unless and until there is a visa immediately available. At this time, then, the petition that his brother had filed for him, the number isn't quite yet available, and the petition that is pending... Well, maybe if you go into mediation and talk for a while. If you talk long enough, it may become available. Or if you're on at this point, Your Honor, the only basis for mediation would be if there is an actual valid possibility of that in the near-term future. However, the government is at all times taking the factors into account, such as this case. You're suggesting the only factor in whether you go to mediation is whether there may be a visa available? Your Honor, it's not the only factor, but in terms of presenting this case before the court, it's not the only factor. If you go to mediation, you do have other avenues. As you say, the Attorney General could exercise his discretion. Yes, Your Honor, but... Nothing could prevent him from exercising his discretion if, while you're in mediation, you said to Mr. Holder, as you said, that there is a valid possibility  of that in the near-term future. Well, I'm not going to say who's here. Surely if you told Mr. Holder the facts of this case, he wouldn't want to deport the person. But mediation gives the government the opportunity to reconsider some of these unfortunate... And I will assure the Court that at all times the government will take into account the circumstances to determine whether or not prosecutorial discretion may be appropriate, and it does involve various communications with other agency divisions. Could I ask you another question on merits, going back to what we were talking about for just a moment? Yes, Your Honor. Because as I understand it, the I.J. found that he didn't offer very strong testimony that the children would stay here. And yet you just made an argument to us that this was a very cohesive family, and so they'd all stick by and support each other. Is that all consistent? Yes, Your Honor. It's consistent because in terms of that, that goes to, again, the weight of the evidence. It's not a question of, and we can't challenge that. I understand that. I may indicate, and the record does indicate there is cohesion such that the family would be supportive of one another, but as far as the separation, there wasn't a clear intent established by the evidence whether or not Petitioner's children would go to Mexico with them or not. Could we separate the cohesion from the separation? Yes, Your Honor. And it also depends on what standard you're applying, what case is controlling. That's another question, which is a legal issue. Yes, Your Honor. However, in this case, there is a legal issue presented because the court's precedent is distinguishable with respect to Salcido, Salcido. This is actually, this case is controlled more so by Perez, where there is conflicting evidence as to what would happen to the children. What year was Salcido, Salcido? Your Honor, I do have the case over there. I can't recall the exact date. You know if it was before or after Perez? Your Honor, I believe it was before Perez. And did Perez discuss Salcido, Salcido? Actually, if Your Honor could give me a moment, I can take a look at it quickly. No, we can check. Because I seem to recall there being a distinction and a discussion of Perez and Salcido, Salcido. Salcido was after Perez. Okay. And there was a discussion where Salcido distinguished Perez. However, the distinction is not controlling in this case. Well, that's the question that we can discuss. Yes, Your Honor. I see my time is up. If there's any other questions. Do you have a question? If I might inquire, Ms. Winston, this may sound as if I'm retreading a conversation that's already been had. In a sense, I am. But if you follow the thrust of Judge Reinhart's inquiry about the possibility of mediation, you've stressed in your responses the range of discretionary authority the Attorney General has. And I think that's exactly what, not meaning to put words in the mouth of my colleague, but I think that's exactly the line that he's suggesting, that we have what I think everyone, including the government, would regard as a quite unhappy situation here. And the question is whether some adjustment can be made. And it's in those terms that the question of mediation arises, with a view to seeing whether one or another of the Attorney General's discretionary authorities might be brought into play. Yes, Your Honor. Have I misled Judge Reinhart? No, Your Honor. You have said that this is a continuing process. It isn't. Exactly. The Attorney General is aware of this problem, considering what form of discretion to exercise. And what Judge Pollack, I think, is suggesting is mediation is a vehicle. Yes, Your Honor. It's not a solution. It's a vehicle in which the government can explore. Now, you say, well, we can do that anyway. Wait just a minute. It would help if the government would, you know, listen to these considerations, because I'm sure that in the end they would, as Judge Pollack said, this is a very unhappy situation for the government as well as for everybody. And mediation is just a vehicle which brings to the forefront these considerations that you say the Attorney General is a very busy man, is going to be considering. When you have a case with a mediation and you go back and say the court's concerned about this case and there is a legal issue on which you might lose, when you go back and say to the Justice Department or the Immigration Department or whoever it is these days when you keep shifting the jurisdiction, when you go back and say, look, we're before a court. We're in a mediation process. Maybe we could consider some of these things that we're going to continue to consider anyway. This is a good way to bring it to a head. And I can't imagine why you would be opposed to doing that. Okay. This is a very old case. We have used your time. I think we should make an inquiry of your adversary as to the mediation possibility as well. He has a couple minutes. Yes, Your Honor. Thank you very much for your time. And I do appreciate Your Honor's emphasis in terms of reminding the government of the possibilities of exercising prosecutorial jurisdiction. And I tell them about empathy, which is the word we use these days in the administration. Yes, Your Honor. I appreciate it. Thank you. We will be delighted to confer with distinguished counsel on taking advantage of what we agree highly is an excellent mediation system that this Court has. A couple of points that I'd like to revisit. The counsel for the government indicated that the parents do not appear on the record, on the tax records from the year 2000. The record indicates that at around that time, the then 62, now 72, excuse me, the then 76 and now 72-year-old gentleman was hired by a respondent so that he could be placed on medical coverage. That is the reason why he was included as a full dependent along with his wife from 1990. And in 2000, he went to work as a 66-year-old for his son so he could get medical coverage. There's a point I'd like to clarify for this Court that the Board has taken the position that the language by the Congress that the hardship required now under Monreal has to be substantially beyond that which would be ordinarily expected from deportation of the alien. That word deportation is a term of the art. It is to be distinguished from removal. It is to be distinguished from exclusion. And it is to be distinguished from the other more neutral words the Board has chosen to mix it with in recent cases, which is departure, which is leaving the country. I submit to this Court that it makes a big difference whether the burden of proof on hardship is limited to that hardship which is beyond deportation, which would include, by logic, any hardship that was created by the ERARA sanctions. If the ERARA sanctions, as the Congress has the plenary power to legislate on the protection of its borders, can rule that somebody has to spend 10 years outside of the United States, it is the Congress's right to legislate that. However, it is the finder of facts' duty to take into consideration that now there's an additional hardship, that the respondent has to stay out for 10 years and leave his qualifying relatives behind for that length of time. So now we have to add the 20 years he has resided in the United States with his family and the 10 years he has to stay out. That fact can and should have been considered by the judge and was not. The question on whether there is sufficient proof that the children will be left behind, it is not just the children who are going to be left behind, it is the elderly parents that are going to be left behind. And there is no case law, not matter of Iggy or any other case, that calls for an affidavit from the departing alien saying that he's going to leave his children with his wife. And there's nothing that says anywhere, matter of Iggy or otherwise, that says that a contract, an affidavit, has to be signed to indicate that two elderly parents, today aged 72 and 62, have to sign a contract to indicate that they're going to remain in the United States and not go with a deported alien. Those are the points that we wanted to make. And one last point. The board takes the position that the context to find hardship under matter of Monreal is not the entire society of the United States, not what is exceptional and extremely unusual hardship. If we had to go home and tell our kids, guess what, your father is going to be deported, you're not going to see him for 10 years, and we want you to realize that this is not exceptional. All right. You have used your time. Thank you. Thank you. The court will issue an order regarding submission or mediation in due course. We will hear the next. So the case is not ordered to be submitted at this time.
judges: Schroeder, Reinhardt, Pollak